HOCKENBERRY, Appellee,

v.

HOCKENBERRY, Appellant.

[Cite as *Hockenberry v. Hockenberry* (1992), 75 Ohio App.3d 806.]

Court of Appeals of Ohio,
Henry County.

No. 7-91-22.

Decided June 4, 1992.

*Richard A. Fisher*, for appellee.
*James E. Hitchcock*, for appellant.

*Per Curiam.*

Defendant-appellant, Robert J. Hockenberry, appeals the judgment of the Court of Common Pleas of Henry County, which granted plaintiff-appellee, Faith A. Hockenberry, a divorce.

The record reveals that the parties were married on March 14, 1980. Four children were born during the marriage. On August 17, 1990, Faith filed for divorce. The parties reached an agreement concerning all matters, except child support, sustenance alimony and payment of Faith's attorney fees. These issues were heard on March 12, 1991 by a referee. On July 31, 1991, the referee issued his report. The referee recommended that: (1) no sustenance alimony be paid by either party; (2) Robert would pay $225 per week, plus poundage and $20 for arrearages, for support of the minor children; and (3) Robert would pay $1,000 of Faith's attorney fees.

On August 8, 1991, Robert filed objections to the referee's report. The trial court overruled Robert's objections on October 18, 1991. On November 19, 1991, the trial court adopted the referee's findings and recommendations concerning sustenance alimony, child support and Faith's attorney fees. On December 4, 1991, Robert filed the instant appeal, asserting six assignments of error:

"1. The trial court erred when it set a child support order at a level where it exceeded the maximum garnishment amount allowed by law (60%) when the obligor was not underemployed and had no income other than his wages.

"2. The trial court erred when it set a support order for arrearage in addition to the regular support which exceeded the statutory maximum garnishment amount (65%) when the obligor was not underemployed and had no income other than his wages.

"3. The trial court erred when it issued a final order that "all issues were resolved" when there had been a specific reservation of the issues raised by the defendant concerning the joinder of Campbell Soup and whether Campbells or plaintiff was responsible to repay the $846.00 that was overwithheld [sic] without a hearing on the matter. The courts [sic] decision denied defendant due process and equal protection of the law by failing to give him a hearing on these issues.

"4. The trial court erred in not providing for automatic adjustments to the maximum statutory level if the defendant remarried.

"5. The trial court erred when it set support at $225.00 per week and awarded the child care portion of support without proof of payment of the child care expenses.

"6. The trial court erred when it ordered the defendant to pay $1,000.00 of plaintiff's attorney fees, when defendant couldn't possibly pay that amount."

Faith has not filed a brief in this appeal. App.R. 18(C) states, in pertinent part, that:

"* * * If an appellee fails to file his brief within the time provided by this rule, * * * the [appellate] court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

I

Pursuant to App.R. 18(C) and our examination of the record, we find that the facts as presented in Robert's brief do reasonably appear to sustain a reversal of the trial court's judgment as to the following specific issues.

A

The Child Support Order

Robert argues that the child support order exceeds the amounts permitted under R.C. 3113.21 and Section 1673(b), Title 15, U.S.Code. R.C. 3113.21 states, in pertinent part, that:

"(D) If a court is required * * *, the court shall issue one or more of the following types of orders to pay the support required under the support order

and also, if required by either of those divisions, any other section of the Revised Code, or the court, to pay any arrearages:

"(1)(a) If the court or the child support enforcement agency determines that the obligor is employed, the court shall issue an order requiring the obligor's employer to withhold from the obligor's personal earnings, a specified amount for support in satisfaction of the support order * * *. To the extent possible, the amount specified in the order to be withheld shall satisfy the amount ordered for support in the support order plus any arrearages that may be owed by the obligor under any prior support order that pertained to the same child or spouse * * *. *However, in no case shall the sum of the amount specified in the order to be withheld and any fee withheld by the employer as a charge for its services exceed the maximum amount permitted under section 303(b) of the 'Consumer Credit Protection Act,' 15 U.S.C. 1673(b)."* (Emphasis added.)

Section 303(B) of the Consumer Credit Protection Act, Section 1673(b), Title 15, U.S. Code, states in pertinent part, that:

*"(2)* The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

*"(A)* where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

*"(B)* where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek."

The record shows that Robert is not supporting any other spouse or child and that arrearages are owed by Robert. Thus, up to sixty-five percent of Robert's disposable earnings is available for child support and arrearages. However, our calculations, based upon the record before us, show that the trial court's child support order exceeds sixty-five percent of Robert's disposable earnings. Accordingly, we sustain the first and second assignments of error.

## B

### Attorney Fee Award

During the March 12, 1991 hearing, Faith presented only the following evidence concerning her attorney fees:

"Q. I'll show you what's been marked as, this is Plaintiff's Exhibit 3 and ask you in [*sic*] you can identify this exhibit.

"A. Yes, these are the hours totalled for the work that Mr. Fisher has done. for me, what they total.

"Q. Okay, do you find those to be fair and reasonable?

"A. Yes, I do."

The exhibit stated: "07/09/90–03/11/91: 29.85 hours legal services rendered @$80.00/hr. TOTAL: $2,388.00." Based upon the foregoing, the trial court ordered Robert to pay $1,000 of Faith's attorney fees.

In *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894, motion to certify record overruled (Sept. 9, 1976), the court indicated that certain criteria should be referenced in determining the reasonableness of a fee and granting a fee award.[1] These include, *inter alia*, the time and labor involved, the fee customarily charged in the locality and the nature and length of the professional relationship with the client. See, also, *Proctor v. Proctor* (Oct. 18, 1989), Allen App. No. 1–88–15, unreported, 1989 WL 122501. There is nothing in the record before us which indicates that the trial court referred to those guidelines or criteria. Thus, we find that there was insufficient evidence upon which to justify a fee award. Accordingly, we sustain the sixth assignment of error.

## C

### Pending Motions

Robert, further, claims that the trial court decision incorrectly stated that it resolved all remaining matters before it. On January 28, 1991, Robert moved the trial court to join his employer, Campbell Soup Company, as a party to the action and to order the reimbursement of extra monies withheld from Robert's pay as child support. At the hearing on March 12, 1991, the referee indicated that the joinder of Campbell Soup Co. and the reimbursement issues would not be addressed at that time, but, rather, would be continued.

---

1. The *Swanson* court specifically referred to the guidelines and criteria listed in DR 2–106(B) and Annotation (1974), 57 A.L.R.3d 475.

The trial court stated in its entry that it found that "[t]he only issues left to decide upon are the issues of child support, sustenance alimony and attorney fees" and then proceeded to decide them. However, the record does not reflect that the trial court ever addressed Robert's motion for joinder or reimbursement prior to its judgment entry which granted Faith the divorce.

With respect to the joinder issue, Civ.R. 75(B)(3) states that the trial court may join the obligor's employer when child support is ordered. See, also, R.C. 3113.21, which requires an employer to comply with withholding orders. On August 20, 1990, the trial court granted Faith's motion for temporary child support. The order further stated that the temporary child support would be paid by withholding the money from Robert's pay. On August 22, 1990, an "Order for Income Withholding" was filed. The order was addressed to the Campbell Soup Co. and it states, in pertinent part, that:

"Pursuant to Civil Rule 75(B)(3), as the employer/income withholder of Robert J. Hockenberry (hereinafter referred to as the obligor) you are hereby joined as a party to this action."

There is nothing in the record which indicates that Campbell Soup Co. was ever dismissed from the lawsuit. Based upon the foregoing, we find that the fact that the trial court did not rule on Robert's motion to join Campbell Soup Co., prior to granting the divorce, was neither prejudicial to Robert nor erroneous.

With regard to the reimbursement issue, the record reveals that this portion of Robert's motion was still pending when the trial court granted the divorce. Nothing in the record indicates that the issue was ever resolved. Thus, on remand, it would appear that the trial court must also address the matter. Accordingly, the third assignment of error is sustained in part and overruled in part.

## II

■ With respect to the fifth assignment of error, Robert claims that the trial court erred in including child care expenses in the child support order because there was no proof that Faith paid for child care.

The record reveals that there was apparently some evidence as to Faith's child care expenses. Specifically, the referee's report recites that Faith testified that her family cared for the children and that she paid them $15 per night and $10 per day or $140 to $160 per week, depending upon the amount of time she worked. Nevertheless, the trial court, in adopting the referee's report, specifically found that "[t]his evidence did not add up and no other evidence, such as 1099 forms, checks or receipts, were offered in evidence." It, therefore, appears that the trial court did not find that the evidence

concerning child care expenses was credible. Yet, the trial court further found that:

"* * * [T]he plaintiff's work could cause defendant more child support than if the plaintiff was not employed, because he must pay a percentage of the child care under the child support guidelines. If Defendant earned $30,000 per year and Plaintiff stayed home with the children, his child support obligation would be $9,996 or a little less than $200 a week. If Plaintiff's child care expenses are correct, her working caused Defendant to pay approximately $250.00 per week under the guidelines."

Then, the trial court awarded an amount of child support ($225, plus poundage and arrearages) which was greater than the amount which would be required (less than $200) if no child care expenses were included, based upon the relative incomes of Faith and Robert as set forth in Robert's brief and confirmed in the record.

■ While nothing in the support award or the record specifically states that the award includes child care expenses, the amount of the child support award suggests that it includes some child care expenses, despite the fact that the trial court appears to have found the evidence unreliable. A deviation from the Child Support Guidelines is permissible, but it must be substantiated in the trial court's decision. See *Hurdelbrink v. Hurdelbrink* (1989), 45 Ohio App.3d 5, 544 N.E.2d 700, motion to certify the record overruled in (1989), 44 Ohio St.3d 715, 542 N.E.2d 1112. Here, the trial court's finding of fact does not state that it is deviating from the Child Support Guidelines or its reasons for deviating from the guidelines. Thus, we are unable to determine if the trial court's action is an abuse of discretion or a proper deviation from the Child Support Guidelines.[2] Accordingly, we sustain the fifth assignment of error.

### III

■ With respect to the fourth assignment of error, Robert argues that the trial court erred in not providing for an automatic adjustment to the child support in the event that he would remarry. Specifically, Robert states that there is a substantial likelihood that he will marry the woman with whom he is currently living and that, given his young age, he may father another child.

---

2. We also note that the trial court's findings concerning child care expenses were adopted from the findings of the referee. Pursuant to Civ.R. 53(E)(5), the referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. It does not appear in this case that the referee's findings were sufficient, based upon Civ.R. 53(E)(5) for the trial court to make the independent analysis necessary to determine the amount of child support.

However, we find that a potential remarriage and fathering of more children are completely irrelevant to his present responsibility to support the children from his marriage to Faith. Accordingly, the fourth assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We remand this matter to the trial court for hearing and further clarification consistent with this opinion.

*Judgment affirmed in part*
*and reversed in part.*

HADLEY, P.J., SHAW and EVANS, JJ., concur.